1  WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Roberto Ramirez Garcia[1], | No. CV-16-4517-PHX-DLR (DMF) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Charles L. Ryan, et al., | |
| Respondents. | |

**TO THE HONORABLE DOUGLAS L. RAYES, U.S. DISTRICT JUDGE:**

On December 22, 2016, Petitioner Roberto Ramirez Garcia[1] ("Petitioner" or "Garcia") filed a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 1) Petitioner currently is confined in the Arizona State Prison Complex, Lewis-Morey Unit in Buckeye, Arizona. Petitioner raises four grounds for relief: (1) that he was not competent to stand trial or enter into a plea agreement, in violation of his due process and equal protection rights; (2) that he was denied due process because he made his plea "unknowingly, involuntarily, and unintelligently"; (3) that he received ineffective assistance of trial counsel in violation of his due process and equal protection rights; and (4) that his sentence was arbitrary and capricious, in violation of his due process and equal protection rights. (*Id.* at 6-9)

Respondents filed an Answer limited to affirmative defenses on May 11, 2017. (Doc. 11) Respondents argue that each of Petitioner's grounds for relief is either

---

[1] In state proceedings, Petitioner was named as "Roberto Garcia Ramirez."

expressly or impliedly procedurally defaulted without excuse. (Doc. 11 at 19-28) Petitioner filed his Reply on July 7, 2017. (Doc. 14) In his Reply, Petitioner contends that ineffective representation by both his trial and his state post-conviction relief counsel constitutes cause for his default. (*Id.* at 2-3) He also alleges government interference in his ability to present claims due to his confinement for three years in a maximum security solitary confinement prison. (*Id.* at 3-4)

For the reasons set forth below, the Magistrate Judge recommends that this Court deny the Petition for Writ of Habeas Corpus and dismiss this action with prejudice.

**I. BACKGROUND**

**A. Petitioner's Plea and Sentencing**

On July 17, 2008, Petitioner was indicted in Yuma County Superior Court on counts of first degree murder, conspiracy to commit first-degree murder, participating in a criminal street gang, and kidnapping. (Doc. 11-1 at 50-52) At arraignment, Petitioner entered a plea of not guilty on all charges. (*Id.* at 55) On November 12, 2008, the county attorney and public defender filed a stipulated motion for a mental health evaluation pursuant to Rule 11.2 of the Arizona Rules of Criminal Procedure. (*Id.* at 57-59) The motion was based on the public defender's concerns about Petitioner's level of maturity and comprehension. (*Id.* at 58) On December 10, 2008, the superior court conducted a hearing on this motion. (*Id.* at 61-69) Petitioner's counsel emphasized that Petitioner was only 16 and was not being tried in Juvenile Court, and stated that her "simple observation is, it's difficult for him to comprehend the seriousness of this situation we're in[.]" (*Id.* at 66) The court did not find grounds "at the present time" to grant the motion and denied it without prejudice. (*Id.* at 61, 67) At a hearing on March 20, 2009, however, the superior court granted Petitioner's request for a mental health examination pursuant to Rule 26.5 of the Arizona Rules of Criminal Procedure, "to assist the court in sentencing[.]" (*Id.* at 71-73)

Following plea negotiations, Petitioner entered an agreement to plead guilty to a count of second-degree murder. (*Id.* at 76-78) The agreement documented that this crime

carried a presumptive sentence of 16 years' imprisonment, a minimum sentence of 10 years, and a maximum sentence of 22 years. (*Id.* at 76)  The parties stipulated to an aggravated term of 22 years' imprisonment. (*Id.*)  At Petitioner's change of plea hearing, it was discussed that Petitioner had undergone his Rule 26.5 mental health examination, but that the report was still pending. (*Id.* at 80, 85-86)  The superior court noted that it "was waiting for [the Rule 26.5 examination report] and that [it would] set another hearing in this matter prior to sentencing." (*Id.* at 81, 109-110)

Petitioner's sentencing hearing was held on June 12, 2009. (Doc. 11-2 at 2, 4-14)  Before the superior court judge announced the sentence, he was asked by Petitioner's counsel if he had reviewed the Rule 26.5 psychological evaluation. (*Id.* at 10)  The judge determined that he had not reviewed the evaluation, but stated that it was still his intention to impose the sentence of 22 years. (*Id.*)  Petitioner's counsel did not wish to pursue the issue, declaring "[w]e understand that that's a stipulated term between the defendant and the State." (*Id.*)  The court recognized two mitigating factors, Petitioner's young age and limited intellectual capacity, but found that aggravating factors, including the use of a deadly weapon, the presence of an accomplice, and ambush "far outweigh[ed]" the mitigating factors. (*Id.* at 11)  The court sentenced Petitioner to a term of 22 years, consistent with the plea agreement. (*Id.* at 11-12)

### B. Petitioner's Post-Conviction Relief Action

Petitioner timely filed a Notice of Post-Conviction Relief ("PCR") with the Yuma County Superior Court on August 24, 2009. (Doc. 11-2 at 16-19)  He was appointed counsel, who filed Garcia's Petition for PCR on July 28, 2010. (*Id.* at 22, 24-39)  Petitioner argued that trial counsel was constitutionally ineffective because she: (1) failed to object to the superior court's denial of a Rule 11 evaluation (*Id.* at 24); (2) failed to move to dismiss the sentencing enhancements relating to Counts One and Two of the indictment (*Id.* at 26); (3) allowed Petitioner to plead guilty and be sentenced to allegedly illegal enhancements (*Id.*); (4) failed to object to the superior court's decision to sentence Petitioner without having read the Rule 26.5 evaluation (*Id.* at 32); and (5) did not request

funding for an independent mental health expert to further evaluate Petitioner (*Id.*). Additionally, Petitioner argued that the trial court itself violated his constitutional rights when it sentenced him after refusing to provide a Rule 11 evaluation, ordered a Rule 26.5 evaluation but declined to read the evaluation report prior to sentencing, and sentenced him to a maximum sentence. (*Id.* at 26) The Petitioner asserted that his conviction and sentencing violated his rights under the "Fifth, Sixth and Fourteenth Amendments to the United States Constitution, and Art[icle] ¶ 4 of the Constitution of the State of Arizona, numerous Arizona statutes, and applicable case law." (*Id.* at 25)

Petitioner also complained that the Rule 26.5 evaluation, which the superior court declined to read prior to sentencing him, "fell below the standards of care consistent [with] that required by a forensic psychologist to determine the competency of a 16 year old mentally retarded individual being sentenced on charges of first degree murder." (*Id.* at 33) On August 12, 2010, through counsel, Petitioner filed a Motion for Funding for Forensic Expert, requesting up to $5,000.00 to fund "a full psychological evaluation to be conducted by a forensic expert." (*Id.* at 107)

In its response to the PCR petition, the county attorney noted that Petitioner's argument regarding the Rule 26.5 evaluation was ambivalent, because Petitioner credited the evaluation when raising sentencing claims on the ground that the court had not read the report, but also criticized the report as being forensically insufficient. (*Id.* at 117) On February 28, 2011, Petitioner's counsel filed a Supplement to the PCR petition, wishing to clarify that his request for evaluation was intended to determine whether Petitioner "was *restorable* if not competent, and if not, *if he could ever be restored* which would preclude criminal prosecution. (*Id.* at 175) On May 6, 2011, the superior court granted Petitioner's motion to fund a forensic expert, and "appointed Dr. Richard Hinton to conduct a full psychological evaluation of the Defendant." (*Id.* at 194)

On October 25, 2012, Petitioner's counsel filed a supplemental petition for PCR. (Doc. 11-3 at 25-39) Counsel explained that after he had spoken with Dr. Hinton about the results of his evaluation, he had discussed the situation with [Petitioner's] father to

obtain a privately funded second opinion on Dr. Hinton's anticipated conclusions. (*Id.* at 27) A second evaluation was conducted by Dr. Jansen DeMarte, Ph.D., a licensed clinical psychologist, the results of which were attached to the supplemental petition. (*Id.* at 30-39) Dr. DeMarte concluded that:

> [o]verall, [Petitioner] does not have a psychological disorder that distorts his reality or impairs his ability understanding courtroom and legal knowledge necessary to stand trial. He does have intellectual deficits, which date back to childhood. While his impairments do not indicate that he is incompetent to stand trial historically or currently, in order for him to have a full appreciation of the legal proceedings, his attorney would need to spend a significant amount of time reviewing this information with him.

(*Id.* at 39).

On November 5, 2012, Petitioner's counsel filed a motion to dismiss voluntarily the Petition for PCR. (Doc. 11-3 at 41-45) An unsigned affidavit attached to this motion was drafted for Petitioner to aver that he had undergone two psychological evaluations while incarcerated[2] and wished to dismiss his petition. (*Id.* at 44) Petitioner's counsel stated that the attached affidavit had not been signed by Petitioner because a notary public had not been available the evening counsel had met with Petitioner at the Yuma prison. (*Id.* at 42) Counsel assured the superior court that he would obtain a signed and notarized affidavit within the week so that an order dismissing the action could be entered expeditiously. (*Id.*) However, on November 30, 2012, Petitioner's counsel filed a subsequent motion requesting that Petitioner's motion to voluntarily dismiss be stricken. (*Id.* at 49) Counsel stated that although he "found no viable grounds to file a Petition," Petitioner had "changed his mind, and desires to file a Petition." (*Id.*)[3] Counsel declared that he expected to be in a position very shortly to file a Notice of

---

[2] The evaluations appear to be that of Dr. Hinton, and the subsequent evaluation conducted by Dr. DeMarte.

[3] This language may be somewhat misleading, as the PCR petition had already been filed and was at that time being prosecuted. Counsel appears to refer to circumstances in which the court would permit him to withdraw as counsel of record and Petitioner then would file another PCR petition, acting *pro per*.

- 5 -

Completion. (*Id.* at 50) Counsel filed the Notice of Completion on December 10, 2012. (*Id.* at 53) Counsel noted that the Rule 26.5 psychological evaluation found that Petitioner was competent to stand trial. (*Id.*) He then declared:

> [u]ndersigned counsel believed that the [Petitioner] was indeed incompetent, and arranged for two independent psychological evaluations. Based on the results of these evaluations, it has become apparent that counsel no longer has the ability to ethically file a Petition regarding the Defendant's competency, which was counsel's original, and continuous intent.

(*Id.* at 53-54) Counsel averred that "[a]fter three psychological evaluations, and counsel's extensive review of this case, counsel can find no viable claims to pursue." (*Id.*) Pursuant to Rule 32(c), counsel asked the superior court to permit Petitioner an additional 45 days to file "any *pro per* petition he desires." (*Id.* at 55) The superior court granted Petitioner the additional time requested, and ordered counsel to provide Petitioner with a copy of all records pertaining to his case. (*Id.* at 59)

Petitioner filed his *pro per* "supplemental or amended petition" for PCR on January 22, 2013. (*Id.* at 64-83) Petitioner raised three initial claims, which he described as follows:

> (1) that his plea was not voluntarily and intelligently made because he was not told that he had a right to have a jury determine the truth of any aggravators alleged by the State, that any such aggravating facts must be found beyond a reasonable doubt, and that he had waived these rights by pleading guilty; (2) that his sentence *was unconstitutional* because the court based its decision using facts that were neither admitted by [Petitioner], nor found by a jury, thus violating [Petitioner's] *Sixth* Amendment right to trial by jury as interpreted in *Blakely v. Washington* . . . ; and/or (3) that [Petitioner's] appointed counsel ineffectively represented him.

(*Id.* at 68, emphasis in original) On March 15, 2013, Petitioner requested the superior court's leave to supplement his petition to add two more claims. (*Id.* at 85-87) The additional claims were: (1) that his plea was not "voluntarily and knowingly entered into"; and that (2) trial "[c]ounsel was ineffective for allowing [Petitioner] to plead guilty,

- 6 -

knowing [her] client could not understand the nature of the charges, [and] had limited intellectual capacity, and was illiterate." (*Id.* at 89-90) The superior court granted [Petitioner's] request to raise additional issues in his PCR action. (Doc. 11-5 at 2)

On August 28, 2013, the superior court summarily dismissed the PCR action, finding that Petitioner had failed to present a "material issue of fact or law which would entitle him to relief under Rule 32 of the Arizona Rules of Criminal Procedure . . . ." (*Id.* at 26) On September 18, 2013, the court issued an amended order and provided additional discussion. (*Id.* at 31-35) The amended order determined that Petitioner had essentially asserted two grounds for relief: (1) "[i]neffective assistance of counsel for allowing the [Petitioner] to plead guilty while aware of the [Petitioner's] inability to fully understand the proceedings"[;] and (2) "[t]he aggravated sentence imposed exceeded the maximum authorized by law." (*Id.* at 32)

The superior court found the first ground lacked merit because evidence supported the conclusion that Petitioner was competent to stand trial, and thus concluded that Petitioner had failed to demonstrate his trial counsel's performance fell below an objective standard of reasonableness. (*Id.* at 32-33) Because the court found that Petitioner's plea agreement stipulated to the aggravated term of 22 years' imprisonment, and further found that Petitioner had also agreed to judicial fact finding "as to any aspect or enhancement of sentence[,]" it held that Petitioner had "waived his right to a jury trial as to aggravating factors to enhance his sentence above the statutory presumptive prison sentence of 16 years." (*Id.* at 34) The amended order affirmed the court's earlier dismissal of Petitioner's PCR proceedings. (*Id.* at 38)

On October 17, 2013, Petitioner filed his petition for review with the Arizona Court of Appeals. (*Id.* at 44-53) His petition requested review on two issues: "(1) [w]hether ineffective assistance of counsel occurred by allowing Petitioner . . . to plead guilty without fully acknowledging his inability to understand and in violation of constitutional rights"; and (2) "[w]hether aggravation of sentence was clearly an abuse of power by

exceeding [the] maximum authorized by law." (*Id.* at 46) The court of appeals denied review (*Id.* at 68-70), and explained its decision as follows:

> On review, [Petitioner] restates his claims that counsel was ineffective for "allowing" him to plead guilty despite his purported cognitive deficits and that his aggravated sentence violated *Blakely* [*v. Washington*, 542 U.S. 296 (2004)] and *Apprendi* [*v. New Jersey*, 530 U.S. 466 (2000)]. But he has not identified any error in the trial court's summary rejection of these claims. Nor has he cited relevant supporting authority or provided references to the record. *See* Ariz. R. Crim. P. 32.9(c)(l) (petition for review must comply with rule governing form of appellate motions and contain "reasons why the petition should be granted" and "specific references to the record"). His failure to meaningfully comply with Rule 32.9 justifies our summary refusal to grant review. *See* Ariz. R. Crim. P. 32.9(f) (appellate review under Rule 32.9 discretionary); *see also State v. French,* 198 Ariz. 119, ¶ 9, 7 P.3d 128, 131 (App. 2000) (summarily rejecting claims not complying with rules governing form and content of petitions for review), *disapproved on other grounds by Stewart v. Smith,* 202 Ariz. 446, ¶ 10, 46 P.3d 1067, 1071 (2002); *cf State v. Bolton,* 182 Ariz. 290, 298, 896 P.2d 830, 838 (1995) (insufficient argument waives claim on review).

(*Id.* at 70) Petitioner filed a petition for review with the Arizona Supreme Court on June 3, 2015. (*Id.* at 72-84) The supreme court summarily denied review. (Doc. 11-6 at 34) The court of appeals issued its mandate on Petitioner's PCR action on February 1, 2016. (*Id.* at 36-37)

## II. LEGAL FRAMEWORK

### A. Exhaustion of Remedies & Procedural Default

A state prisoner must properly exhaust all state court remedies before this Court may grant an application for a writ of habeas corpus. 28 U.S.C. § 2254(b)(1), (c); *Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Arizona prisoners properly exhaust state remedies by fairly presenting claims to the Arizona Court of Appeals in a procedurally appropriate manner. *O'Sullivan v. Boerckel*, 526 U.S. 838, 843-45 (1999); *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999); *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994). Arizona's "established appellate review processes" consist of a direct appeal and a PCR proceeding. *See* Ariz. R. Crim. P.

31, et. seq. and Rule 32, et. seq.; *see also Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) ("To exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32.").

A claim can also be subject to an express or implied procedural bar. *Robinson v. Schriro*, 595 F.3d 1086, 1100 (9th Cir. 2010). An express procedural bar exists if the state court denies or dismisses a claim based on a procedural bar "that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989); *Stewart v. Smith*, 536 U.S. 856, 860 (2002) (Arizona's "Rule 32.2(a)(3) determinations are independent of federal law because they do not depend upon a federal constitutional ruling on the merits"); *Johnson v. Mississippi*, 486 U.S. 578, 587 (1988) ("adequate" grounds exist when a state strictly or regularly follows its procedural rule). *See also Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991); *Robinson*, 595 F.3d at 1100. A petitioner who fails to follow a state's procedural requirements for presenting a valid claim deprives the state court of an opportunity to address the claim in much the same manner as a petitioner who fails to exhaust his state remedies. Thus, in order to prevent a petitioner from subverting the exhaustion requirement by failing to follow state procedures, a claim not presented to the state courts in a procedurally correct manner is deemed procedurally defaulted, and is generally barred from habeas relief. *Coleman*, 501 U.S. at 731-32.

An implied procedural bar exists if a claim was not fairly presented in state court and no state remedies remain available to the petitioner. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989); *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002).

This Court may review a procedurally defaulted claim if the petitioner can demonstrate either: (1) cause for the default and actual prejudice to excuse the default; or (2) a miscarriage of justice. 28 U.S.C. § 2254(c)(2)(B); *Schlup v. Delo*, 513 U.S. 298, 321

(1995); *Coleman*, 501 U.S. at 750; *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986); *United States v. Frady*, 456 U.S. 152, 167-68 (1982).

### B. Ineffective Assistance of Counsel ("IAC")

Under clearly established federal law on IAC, Petitioner needs to show that his counsel's performance was both objectively deficient, and caused him prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This results in a "doubly deferential" review of counsel's performance. *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). The Court has discretion to determine which *Strickland* prong to apply first. *LaGrand v. Stewart*, 133 F.3d 1253, 1270 (9th Cir. 1998). A habeas court reviewing a claim of IAC must determine "whether there is a reasonable argument that counsel satisfied *Strickland*'s deferential standard, such that the state court's rejection of the IAC claim was not an unreasonable application of *Strickland*. Relief is warranted only if no reasonable jurist could disagree that the state court erred." *Murray v. Schriro*, 746 F.3d 418, 465-66 (9th Cir. 2014) (internal citations and quotations omitted). In other words, this Court's "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Petitioner received objectively deficient representation if his counsel "'fell below an objective standard of reasonableness' such that it was outside 'the range of competence demanded of attorneys in criminal cases.'" *Clark v. Arnold*, 769 F.3d 711, 725 (9th Cir. 2014) (quoting *Strickland*, 466 U.S. at 687). To demonstrate prejudice, Petitioner "must show that there [wa]s a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The U.S. Supreme Court has instructed that none of its decisions suggests "that the indigent defendant has a constitutional right to compel appointed counsel to press non-frivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983). The

Court further explained, "[e]xperienced advocates . . . have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id.* at 751-52. *See also Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989).

**III. DISCUSSION**

**A. Whether Petitioner's Grounds Were Procedurally Defaulted**

As noted above, the Arizona Court of Appeals found Garcia's petition for review lacking pursuant to Arizona Rule of Criminal Procedure 32.9(c)(1), because he failed to identify "any error in the trial court's summary rejection of [his] claims[,]" and because he further failed to cite "relevant supporting authority" or to provide "references to the record." In its Amended Order filed on September 18, 2013, the PCR trial court provided reasons supporting its findings: (1) that Petitioner had not demonstrated his trial counsel provided IAC or that he suffered resulting prejudice; and (2) that Petitioner's contention that his sentence exceeded the maximum imposed by law was meritless. (Doc. 11-5 at 32-34) As the court of appeals held, Petitioner in fact failed to specify how the trial court erred in rejecting his claims, and did not cite relevant references to the record. (*See id.* at 44-53)

Because the appellate court applied a procedural bar to avoid consideration of the merits, Petitioner's claims are procedurally defaulted. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802-05 (1991); *Insyxiengmay v. Morgan*, 403 F.3d 657, 665 (9th Cir. 2005) (procedural default "applies to bar federal habeas review when the state court has declined to address the petitioner's federal claims because he failed to meet state procedural requirements"); *see also Simmons v. Schriro*, 187 Fed. App'x. 753, 754 (9th Cir. 2006) (holding that Arizona's procedural rules are "clear" and "well-established"); *Miloni v. Schriro*, 2006 WL 1652578, *5 (D. Ariz. Jun. 7, 2006) (concluding that a procedural ruling based on Rule 32.9(c) is adequate); *State v. French*, 7 P.3d 128, 131 (Ariz. Ct. App. 2000) (summarily rejecting claims for failure to comply with Rule 32.9), *disapproved of on other grounds by Stewart v.*

*Smith*, 46 P.3d 1067, 1071 (Ariz. Ct. App. 2002); *State v. Carriger*, 692 P.2d 991, 995 (Ariz. 1984) (observing that "[p]etitioners must strictly comply with Rule 32 or be denied relief").

Petitioner impliedly asserts that he raised each of his § 2254 habeas grounds for relief in his petition for review of the PCR trial court's summary dismissal. In his Petition, Garcia marked check boxes indicating, for each of his four grounds asserted, that he had raised each issue asserted to the Arizona Court of Appeals in his state PCR action. (Doc. 1 at 6-10) However, the Magistrate Judge concludes that Petitioner failed to present to the Arizona Court of Appeals several Grounds asserted in his Petition. These include Ground I, involving Petitioner's competence to stand trial or enter into a plea agreement, and three sub-claims under Ground III, alleging ineffective assistance of trial counsel for her failure to: (1) request funding for an independent expert; (2) object to the denial of his Rule 11 request; (3) object to the trial court's decision not to read the Rule 26.5 evaluation prior to sentencing; or (4) further investigate Petitioner's competence. As is noted, exhaustion of state remedies includes fair presentment of a claim "in each appropriate state court[.]" *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Put another way, § 2254 habeas petitioners are required to give state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. Thus, if Petitioner in his PCR action raised claims before the trial court but then did not argue them subsequently before the court of appeals, these claims were not exhausted. *See Castillo v. McFadden*, 399 F.3d 993, 999-1000 (9th Cir. 2005). Any such claims are procedurally barred because: (1) it would be futile for Petitioner to return to the state courts to pursue such claims (*see Teague*, 489 U.S. at 297-99, Ariz. R. Crim. P. 32.2); (2) Petitioner is time-barred from filing another petition for post-conviction relief under Rule 32 (*see* Ariz. R. Crim. P. 32.2(a) and 32.4(a), *Henry v. Ryan*, 720 F.3d 1073, 1081 (9th Cir. 2013), *Beaty*, 303 F.3d at 987); and (3) the record fails to support a finding that any exceptions to the procedural rules referred to in Rule 32.4(a) and Rule 32.2(b) apply.

Accordingly, each of Petitioner's grounds for relief asserted in this § 2254 action was procedurally defaulted in state court, either expressly or impliedly.

### B. Whether Default of Any Claims is Excused

Federal habeas corpus review of Petitioner's procedurally defaulted claims is precluded unless Petitioner establishes either a "fundamental miscarriage of justice" or both "cause and prejudice" to overcome the procedural bar. *See Coleman*, 501 U.S. at 749. To establish a fundamental miscarriage of justice, a petitioner must present "new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence - that was not presented at trial." *Schlup*, 513 U.S. at 324. The petitioner has the burden of demonstrating that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327.

To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Teague*, 489 U.S. at 298. A showing of "interference by officials," IAC in violation of the Constitution, or "that the factual or legal basis for a claim was not reasonably available" may constitute cause. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Prejudice" is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a habeas petitioner bears the burden of demonstrating that the alleged constitutional violation "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *see Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991). If a petitioner fails to establish cause for his procedural default, then the court need not consider whether a petitioner has shown actual prejudice resulting from the alleged constitutional violations. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

*1. Whether Petitioner's IAC claims establish cause*

As noted, constitutionally ineffective assistance of counsel may constitute cause sufficient to excuse procedural default in federal habeas cases. *Coleman*, 501 U.S. at

752. The legal standard applied to determine such ineffectiveness is that announced in *Strickland v. Washington*. *Id.* (S*ee also* Section II.B, above)

In his Petition, Garcia alleges only grounds based on the ineffectiveness of his trial counsel. (Doc. 1) In his Reply, Petitioner contends that: (1) the claims of IAC he raised in state court are sufficient to establish cause (Doc. 14 at 2-3, 5-12); and (2) that his three-year "term" in a "maximum security solitary confinement prison" amounted to "government interference which impeded the presentation of his claims" (*Id.* at 3-4). Further, he asserts he has suffered prejudice both because he "has never had a proper and diligent psychological evaluation" and because he has been prevented from further investigating his claims and presenting new evidence owing to his solitary confinement. (*Id.* at 12)

Petitioner argues here, as he did in his PCR action, that his trial counsel was ineffective when she did not object to the trial court's decision not to read the Rule 26.5 evaluation prior to sentencing, and because she did not request funding for "an independent expert." (*Id.* at 5) The Rule 26.5 evaluation was conducted by Ashley B. Hart II, Ph.D., a licensed psychologist. (Doc. 11-2 at 65-71) Dr. Hart was appointed to conduct the evaluation by the court, after both parties jointly nominated him. (Doc. 11-1 at 59, 71, 73) Petitioner asserts that Dr. Hart concluded Petitioner had an IQ of 63 and was "borderline incompetent." (Doc. 14 at 4) However, Dr. Hart's assessment did not find Petitioner to be "borderline incompetent." While Dr. Hart noted that Petitioner exhibited "borderline intellectual functioning" (Doc. 11-2 at 68), Dr. Hart actually found that Petitioner's intellectual level placed him in a "mildly mentally deficient range," and that Petitioner maintained "sufficient understanding to enter into a plea, and understand court proceedings." (*Id.* at 67) Dr. Hart further found that Petitioner had "sufficient short term memory and concentration ability to participate in trial[.]" (*Id.*) In addition to finding that Petitioner was competent to stand trial or accept a plea, Dr. Hart concluded that Petitioner should be given the opportunity, while serving any sentence, to receive

basic adult education, training in a skilled trade, and drug and alcohol education. (*Id.* at 69)

Given the actual conclusions of Dr. Hart's Rule 26.5 evaluation that Petitioner was competent to stand trial or accept a plea, Petitioner's arguments that his trial counsel provided ineffective assistance by not objecting to the trial court's decision not to read Dr. Hart's evaluation lack merit . Moreover, the subsequent mental health evaluation of Petitioner conducted by Dr. DeMarte, who was retained by Petitioner's family, only served to reaffirm Dr. Hart's ultimate conclusion that Petitioner was competent to stand trial. (Doc. 11-3 at 38-39) Further, although Dr. Hinton's evaluation is not in the record, Petitioner's appointed PCR counsel indicated this evaluation also assessed Petitioner as competent to stand trial. (*Id.* at 26-27)

Petitioner further argues that his trial counsel was ineffective for not objecting to or challenging the trial court's denial without prejudice of the request for a Rule 11 evaluation, and asserts that had he been given a proper Rule 11 evaluation, he may have been determined to be incompetent. (Doc. 14 at 14) Under Arizona law, a "trial court has broad discretion in determining whether reasonable grounds exist to order a competency hearing and its decision will not be reversed absent a manifest abuse of discretion." *State v. Amaya-Ruiz*, 166 Ariz. 152, 162, 800 P.2d 1260, 1270 (1990). There is nothing in the record to support a finding that trial counsel was ineffective for failing to object to the trial court's exercise of its "broad discretion" in denying without prejudice the motion for a Rule 11 evaluation. Further, Petitioner fails to demonstrate how his several subsequent mental status evaluations were not adequate to establish his competency to stand trial or accept a plea.

Petitioner also contends that trial counsel was ineffective because she did not request funding for an independent expert. (Doc. 1 at 8) This contention fails because Dr. Hart was nominated jointly by the county attorney and Petitioner's counsel, Petitioner does not argue that Hart's evaluation was biased, and because Hart's conclusion of Petitioner's adequate competency was subsequently confirmed by two

- 15 -

additional evaluations conducted by experts selected by Petitioner's PCR counsel and Petitioner's family. Moreover, Petitioner's argument that trial counsel was ineffective for allowing him to plead guilty, given Dr. Hart's assessment that he demonstrated "serious mental deficiencies, including a limited intellectual capacity, an IQ score of 63, [and that he] could not state his ABC's, and read at a 3rd grade level" (Doc. 1 at 8), is fatally compromised by Dr. Hart's ultimate opinion that Petitioner was mentally competent to stand trial or accept a plea. Although Petitioner contends that trial counsel was ineffective for not seeking an another mental competency evaluation, it is significant that Petitioner's PCR counsel initially aggressively criticized Dr. Hart's evaluation (Doc. 11-2 at 24-39), but then determined he could not ethically persist in this argument after Drs. Hinton and DeMarte reached comparable conclusions about Petitioner's competency to stand trial. (Doc. 11-3 at 53-56)

Petitioner contends for the first time in his Reply that PCR counsel "was ineffective for not further investigating the competency of his client and not providing proof that his claims of incompetency were no longer 'viable.'" (*Id.* at 9) Arguments raised for the first time in a federal habeas petitioner's reply brief are considered waived. *Degadillo v. Woodford*, 527 F.3d 919, 930 n.4 (9th Cir. 2008). In any event, however, PCR counsel obtained state funding for Dr. Hinton's evaluation, and also facilitated the privately funded evaluation conducted by Dr. DeMarte. Dr. DeMarte's evaluation expressly found Petitioner competent to stand trial, and PCR counsel averred that Dr. Hinton had advised him that Hinton's evaluation had reached a similar conclusion. Thus, the record indicates that PCR counsel did pursue additional evaluations of Petitioner's competency, and Dr. DeMarte's assessment is record evidence supporting counsel's conclusion regarding the non-viability of Petitioner's claims.

Petitioner also asserts for the first time in his Reply that PCR counsel "gave up" on his claims because of a "difficult and frustrating relationship" with Petitioner. (Doc. 14 at 10) Setting aside that Petitioner waived this argument by initially raising it in his Reply, Petitioner cites no record evidence to support the allegation that his PCR counsel

abandoned him. Instead, the record demonstrates that, after Dr. Hart "rendered an opinion that [Petitioner] was competent[,]" PCR counsel arranged for the independent psychological evaluations performed by Drs. Hinton and DeMarte. (Doc. 11-3 at 53) PCR counsel then advised the superior court that, on the basis of these evaluations, "it has become apparent that counsel no longer has the ability to ethically file a Petition regarding [Petitioner's] competency." (*Id.* at 53-54) Counsel further informed the court that, having extensively reviewed the case, he could "find no viable claims to pursue." (*Id.* at 54) He told the court that he would file a notice of completion, and requested 45 days for Petitioner to file his own *pro per* petition, if he so desired. (*Id.* at 55) PCR counsel also declared that he intended to remain as attorney of record should Petitioner choose to file a *pro per* petition, and avowed that he had transmitted the entire file to Petitioner. (*Id.*)

For the foregoing reasons, even had Petitioner not waived his arguments of IAC by his PCR counsel, the Magistrate Judge cannot conclude that either his trial counsel's or his PCR counsel's representation fell "below an objective standard of reasonableness" or outside "the range of competence demanded of attorneys in criminal cases." *Strickland*, 466 U.S. at 687. Accordingly, Petitioner fails to show that his representation by his trial and PCR counsel establishes cause to excuse his procedural default.

### 2. *Whether Petitioner's solitary confinement establishes cause*

Petitioner also argues that his placement in a solitary confinement unit establishes cause as "government interference which impeded the presentation of his claims." (Doc. 14 at 3-4) This argument lacks merit. The record indicates that Petitioner was transferred to the solitary confinement unit on or after May 29, 2014. (*Id.* at 17-18) Petitioner filed his "supplemental or amended petition" for PCR on January 22, 2013, which was well before he was transferred. (Doc. 11-3 at 64-83) On August 28, 2013, the superior court summarily dismissed the PCR action. (*Id.* at 26) On September 18, 2013, the superior court issued an amended order, providing additional discussion. (*Id.* at 31-35) On October 17, 2013, Petitioner filed his petition for review with the Arizona Court of

Appeals. (*Id.* at 44-53) This also was before Petitioner was transferred. Accordingly, with the exception of Petitioner's Petition for Review filed with the Arizona Supreme Court on June 3, 2015, Petitioner completed briefing on his PCR action before he was placed in the solitary confinement unit. Moreover, Petitioner has provided no details or arguments whatsoever on how this confinement "impeded his ability to litigate and present claims in the [Arizona Supreme Court], and ultimately impeded [his] ability to be diligent and further to investigate his claims and present new evidence." (Doc. 14 at 4)

Reasonably, Petitioner does not argue actual innocence or a fundamental miscarriage of justice as cause to excuse his procedural default. As is noted by Respondents, the record indicates that at his plea proceedings Petitioner admitted killing his victim and repeated this admission at sentencing. (Doc. 11 at 27-28, Doc. 11-1 at 104, Doc. 11-2 at 9)

For the reasons provided above, the Magistrate Judge concludes that Petitioner has failed to establish cause sufficient to excuse the procedural default of his claims. Because Petitioner does not demonstrate cause, the Court need not consider arguments on prejudice. *Smith v. Murray*, 477 U.S. at 533.

## IV. CONCLUSION

The Magistrate Judge concludes that Petitioner's claims are procedurally barred from federal habeas corpus review and that Petitioner has not established a basis to overcome that bar. The Magistrate Judge therefore recommends that the Petition be denied.

Accordingly,

**IT IS THEREFORE RECOMMENDED** that Roberto Ramirez Garcia's Petition for Writ of Habeas Corpus be **denied and dismissed with prejudice**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability be **denied** because dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review. *See United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Rule 72, Federal Rules of Civil Procedure.

Dated this 31st day of October, 2017.

_____
David K. Duncan
United States Magistrate Judge

*Magistrate Judge Duncan signing for Magistrate Judge Fine